ROSENBERG, ROBIN L„ Associate Judge.
Everton Baker appeals his convictions for fleeing or attempting to elude a law enforcement officer, misdemeanor possession of cannabis, and driving without a valid license. He raises two issues on appeal. First, he argues that the trial court erred by refusing to instruct the jury on a permissible lesser included offense of fleeing or attempting to elude a law en *758 forcement officer. Second, he argues that the trial court erred by permitting the state to question him about the nature of his prior arrests. We reverse because the trial court admitted evidence that Baker was previously arrested for failing to appear in court and for possession of marijuana when the defense had not opened the door to such testimony.
The charges arose from an incident that occurred after Officer Juan Pena saw Baker park his car in front of a business. Officer Pena noticed that the car’s tag was expired and ran a check on it. He then ran a check on the driver’s license associated with the vehicle and verified that Baker was driving the vehicle. Baker’s license had been suspended, so Officer Pena decided to conduct a traffic stop. Baker returned to his car and began to drive away. Officer Pena pulled up behind him and activated his blue and white overhead lights.
Baker did not stop. He drove all the way home, jumped out of his car, and ran over to Officer Pena’s vehicle. He told Officer Pena he did not stop because he did not want to be towed for driving with a suspended license. Baker was arrested and his vehicle was searched. Officers found approximately 1.4 grams of marijuana inside the driver’s door panel.
At trial, Baker testified on his own behalf and admitted that he was driving his car on the night of the arrest. He admitted that he drove to the store, bought something to drink, and got back into his car. He saw Officer Pena’s vehicle as he was leaving the store, and he saw Officer Pena activate the vehicle’s lights.
At this point, Baker said he did not know what to do. He was alone in a dark area and did not want to be “roughed up by the cops.” He said he had no intention of fleeing or eluding the officer; he always intended to pull over when he got home. He explained that he simply did not have the money to get his car from the impound if it was towed.
On cross-examination, Baker testified that he has had bad experiences with the police. He used to get pulled over a lot, and he felt that it was because he used to have dreadlocks. He did not know how else to explain it'. It simply felt like profiling to him.
The state requested a sidebar and asked the court for permission to go into detail about Baker’s prior arrests. Baker had not been convicted of a felony or crime of dishonesty, but he had several arrests and license suspensions on his record. Baker argued that he had not opened the door into his previous arrests, but the court felt otherwise and allowed the state to question him regarding the exact nature of his arrests. The court allowed the state to ask Baker what he had been arrested for, but would not allow the state to present any evidence to rebut Baker’s answer.
The state then asked Baker what he had been arrested for in the past. Baker responded:
I was arrested for not showing up in court. I showed up ten minutes late in court, so they put out like a warrant for me. And it was suppose [sic] to be thrown out, but I guess it was still in the system, so I still got arrested for not showing up in court.
The state then asked if that was the only thing he had ever been arrested for. Baker admitted he had also been arrested for possession of marijuana. The state referred back to Baker’s testimony during its closing argument, stating:
[The defendant] fled on May 22, 2010, not only because his license was suspended, not only because of that, but because of the marijuana he had in his *759 car. And the testimony showed he’s been arrested in the past for marijuana.
Similar fact evidence of other crimes is only admissible when it is relevant to prove a material fact at issue. Cartwright v. State, 885 So.2d 1010, 1013 (Fla. 4th DCA 2004) (citing § 90.404(2)(a), Fla. Stat. (2008)). It is not admissible when the evidence is relevant “solely to prove bad character or propensity.” Id.
Prior arrests which do not result in convictions are not a proper subject for impeachment or cross-examination. Fulton v. State, 335 So.2d 280, 283 (Fla.1976) (“Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness.” (quoting Michelson v. United States, 335 U.S. 469, 482, 69 S.Ct. 213, 222, 93 L.Ed. 168 (1948))). The state does not dispute this, but argues that the defendant opened the door regarding the nature of his prior arrests by testifying that he had bad experiences with police in the past.
An exception to the rule that a prosecutor is generally not allowed to inquire into a defendant’s prior convictions occurs when the defendant “opens the door.” “The concept of ‘opening the door’ permits admission of inadmissible evidence for the purpose of qualifying, explaining or limiting testimony previously admitted.” Sinclair v. State, 50 So.3d 1223, 1226 (Fla. 4th DCA 2011) (citing Hudson v. State, 992 So.2d 96, 110 (Fla.2008)). “The ‘opening the door’ concept is based on considerations of fairness and the truth-seeking function of a trial, where cross-examination reveals the whole story of a transaction only partly explained in direct examination.” Bozeman v. State, 698 So.2d 629, 631 (Fla. 4th DCA 1997). When a defendant tries to characterize his or her prior convictions in a favorable light at trial, the defendant is considered to have “opened the door” and the state is “entitled to inquire further regarding the convictions to attempt to dispel any misleading impression.” Rogers v. State, 964 So.2d 221, 223 (Fla. 4th DCA 2007); see also Ross v. State, 913 So.2d 1184, 1187 (Fla. 4th DCA 2005).
Baker’s testimony regarding his bad experiences with the police based on what he perceived to be “profiling,” while perhaps truthful, did not present a complete picture of the extent of his interaction with law enforcement. This testimony potentially portrayed Baker as a victim of police wrongdoing in the past and could have provided the jury with a reason why Baker fled. Although not strictly a defense to fleeing and eluding, Baker’s story placed his conduct in a more favorable light and perhaps was designed to appeal to the mercy of the jury; such testimony would have been misleading in the absence of any other material facts that may bear on the issue. The fact that Baker’s interactions with the police also included prior arrests provided the jury with a more complete, and therefore balanced, picture of Baker’s experiences with the police. Because Baker suggested that his prior experiences with the police motivated his conduct in this case, the state was entitled to explore the details of the prior contacts in cross examination to test the veracity of his story.
However, while the trial court did not err in finding that Baker opened the door to cross-examination about the fact that Baker previously had been arrested, the court should not have permitted the state to delve into the nature of the particular arrests. The trial court must prevent the parties from “wandering too far afield.” *760 Ross, 913 So.2d at 1187 (quoting Lawhorne v. State, 500 So.2d 519, 523 (Fla.1986)). Like Ross, the issue presented in this case is how wide did Baker “open the door” when he testified about his prior experience with law enforcement. Baker’s testimony did not give the state latitude to delve deeper into the specific nature of Baker’s prior arrests for not showing up in court and for possession of marijuana. The nature of Baker’s prior arrests had nothing to do with how the police treated him during these encounters, experiences which he claimed as motivation for his actions in this case.
Furthermore, the fact that the cross-examination disclosed evidence of Baker’s prior arrest for possession of marijuana, one of the same crimes for which he was charged and convicted in this case, made the testimony not only irrelevant, but highly prejudicial to Baker. We do not find that the error in admitting evidence of Baker’s prior arrest for possession of marijuana was harmless, based on our review of the record, because we cannot say “that there is no reasonable possibility that the error contributed to the conviction.” State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986). The erroneous admission of collateral crimes evidence is presumptively harmful. See Miller v. State, 804 So.2d 609, 612 (Fla. 3d DCA 2002) (quoting Czubak v. State, 570 So.2d 925, 928 (Fla.1990)).
Baker also appeals his conviction because the trial court refused to give an instruction informing the jury that Baker could be convicted of a lesser included offense of refusal to obey an officer’s lawful order — a misdemeanor of the second degree. The trial court’s refusal to give the instruction on the permissible lesser included offense was error. Koch v. State, 39 So.3d 464, 466 (Fla. 2d DCA 2010); see also In re Standard Jury Instructions in Criminal Cases—Report 2011-01, 73 So.3d 136, 137-38 (Fla.2011). In this case, the error was harmless because the jury convicted Baker of a third-degree felony after being given the option of convicting him of resisting or obstructing an officer without violence — a first-degree misdemeanor. See State v. Abreau, 363 So.2d 1063, 1064 (Fla.1978); see also Sherrer v. State, 898 So.2d 260, 261 (Fla. 1st DCA 2005). On retrial, the trial court shall instruct the jury on the lesser-included offense of refusal to obey an officer’s lawful order.
For the reasons stated above, we reverse Baker’s conviction and remand for a new trial.

Reversed and Remanded for a new trial.

GROSS, J., concurs.
LEVINE, J, concurs specially with opinion..